THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM T. MESKAN, Defendant-Appellant.

(No. 54839;

First District—April 13, 1971.

*Rehearing denied June 1, 1971.*

Lewis V. Morgan, Jr., of Wheaton, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and John Gibaitis, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McCORMICK delivered the opinion of the court:

On October 17, 1969, William Meskan, defendant, having waived a jury, and acting as his own attorney, was convicted, in a bench trial, of driving while under the influence of intoxicating liquor and driving an automobile at an unreasonable rate of speed. The complaint also charged defendant with drag racing and resisting arrest. The defendant was found guilty of driving at an unreasonable and improper speed and driving under the influence of intoxicating liquor, and he was fined $50 and $100 respectively.

Officer Gary Smith, of the Schiller Park Police Department, testified that on September 1, 1969, he and Officer Anthony Clementi were driving a marked squad car when they noticed the defendant driving at a clocked speed of 70 miles an hour in an area with a 40-mile speed limit. While they pursued the defendant's car they noticed another vehicle 75 feet behind the defendant. The defendant voluntarily stopped when he saw the police car, and walked toward them. The officer testified that his walk was "sway to a marked stagger," and that "an odor resembling alcohol was detected on his breath." After he had been advised of his constitutional rights the defendant was arrested and taken to the police station where he was questioned.

He stated that he had been drinking whiskey, but did not know how much, nor how long he had been drinking. He said he did not know the driver of the car which passed him. Officer Smith testified that the defendant was coherent at times when being questioned; that he was not given a coordination test because at times "he would be quite amicable and quite cooperative, and all of a sudden without provocation, he would became very abusive and belligerent and actually try to strike us. His hands were restrained behind him with hand-cuffs and he was seated in a chair. On two occasions, he jumped up and tried to knock Officer Clementi." The officer added that he had been on the police force seven months and had arrested some eight persons for driving under the influ-

ence of alcohol. He based his opinion of the defendant's actions on that past experience.

On cross-examination Officer Smith further testified that he and Officer Clementi noticed defendant's car and another vehicle at about 3:00 A.M., on the date in question, when driving east on Irving Park; that the defendant was driving in the left lane, and the other car in the right lane. They apprehended the defendant on River Road and advised him he was under arrest for drag racing and speeding.

Officer Clementi testified that he had accompanied Officer Smith on the date in question; that "if the same questions were propounded to me as to Officer Smith, my answers would be about the same." He said he heard the defendant say he was not drag racing, and that he saw another car, but it was not stopped. On cross-examination he testified that he felt it was necessary to use mace in order to arrest the defendant, and to handcuff him.

Lt. John Hoagland, supervising officer, testified that he saw only what occurred in the station when he was called there by the two arresting officers. He saw the defendant sitting handcuffed to a chair, and thought the defendant "seemed very nice when I came in, but his attitude changed after about five minutes. Then he just went off the deep end for about ten minutes, and then was nice for five minutes. I was close enough to detect the odor on his breath as alcoholic beverage."

The defendant testified in his own behalf that he was supposed to meet a friend on River Road; that when he arrived at the meeting place he stopped and looked around, but did not see his friend, so decided to go home because it was almost 3:00 A.M. His testimony continued as follows: He was driving north on River Road when he noticed another car passing him on the left-hand side. Defendant's car had a broken suspension and he had only two inches of ground clearance. He was driving about 35 miles an hour when the other car passed him; he did not recognize the driver. He saw the patrol car's spotlight and turned off the road, and the police officer told him he was under arrest for speeding. He asked the officer about the car that had passed him at a higher rate of speed, but the officer said, "Don't worry about him. You are under arrest, not him." He did not understand why they handcuffed him and sprayed him with mace at the time of arrest, since he was not giving them any trouble. He was kept in a cell until Tuesday afternoon, and was not violent during the time he was in the police station.

The defendant further testified that he had not been drinking on the night in question; that he had been to Auburn, Indiana, with a friend, had had a couple of beers about 10:00 A.M., and had arrived home about

midnight. Later he went to a tavern called The Nickel Bag, looked for a friend who was not there, then started home and was arrested. He said he had nothing to drink at the tavern, and he denied stating that he was in a drag race with two other vehicles.

The facts in this case are somewhat confusing. The defendant is charged with driving an automobile at an unreasonable rate of speed, and of driving while under the influence of intoxicating liquor. He was convicted of these two offenses. He was also charged with drag racing and resisting arrest. The officers appear unable to agree with one another as to which lane defendant was in at the time of the incident. Defendant denied that he had been drinking on the night in question. Neither of the arresting officers had had long experience as police officers or in making arrests of this nature. The officers gave no coordination test to the defendant, but they apparently felt the need to handcuff him and spray him with mace. The explanation for the use of the spray was "I thought this was necessary and I thought it was necessary to handcuff the Defendant." No further reason was given for these actions.

■■ Without citation of authority, it can be stated that in order to convict a defendant of a criminal offense he must be proved guilty beyond reasonable doubt, and if the trial court feels that such is the case, it is still within the purview of a reviewing court to determine from the evidence whether or not there was such a conviction. We have carefully studied the record and feel that the evidence does not support the determination of the trial court. The judgment of the Circuit Court is reversed.

Judgment reversed.

LEIGHTON, P. J., and STAMOS, J., concur.